**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHEILA K. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-612-M |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Sheila K. Smith, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

I. **Procedural Background**

Ms. Smith's amended disability onset date is April 14, 2004. *See* Administrative Record [Doc. #14] (AR) at 15; 397. She originally filed her application for SSI on January 8, 2004. The Social Security Administration denied her application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR at 31-40. The Appeals Council granted Ms. Smith's request for review and remanded the case to the ALJ for a supplemental hearing and further development of the record. AR 41-44. The supplemental hearing, before the same ALJ, was

scheduled for October 22, 2008. Ms. Smith's attorney appeared, but Ms. Smith, herself, was not allowed to enter the building where the hearing was being held because the picture I.D. she provided was an expired driver's license. The ALJ determined that Ms. Smith had "waived or given up her right to appear" at the hearing. AR 389. Additionally, the ALJ had not received the results of a consultative mental examination. No testimony was taken, but the ALJ, vocational expert (VE) and Ms. Smith's attorney all agreed to a supplemental hearing to be held by telephone at a later date. There is no indication in the record that the supplemental hearing was ever held.

The ALJ issued a second unfavorable decision on January 29, 2009. AR 11-25. The Appeals Council denied Ms. Smith's request for review, and the decision of the ALJ became the final decision of the Commissioner. This appeal followed.

## II. **The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Ms. Smith had not engaged in substantial gainful activity since the amended onset date. AR 15, 23. At step two, the ALJ determined that Ms. Smith suffers from the following severe impairments: schizoaffective disorder, bi-polar type, improving, post-traumatic stress syndrome, pain disorder associated with both psychological factors and a general medical condition, and alcohol and tobacco abuse. AR 15-16, 23. At step three, the ALJ found that Ms. Smith's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16, 23.

The ALJ next determined that Ms. Smith retained the residual functional capacity (RFC) for a wide range of sedentary work. In addition to certain postural limitations, the ALJ determined that Ms. Smith can "carry out simple and some more complex tasks with routine supervision," that she "can relate appropriately to coworkers and supervisors" but that she "cannot relate to the general public," that she can "perform the basic mental demands of work activity," and that she can "deal with changes in a routine work setting." AR 23. Given this RFC, the ALJ determined at step four that Ms. Smith cannot perform the duties of her past relevant work. AR 23. At step five, the ALJ relied on vocational testimony from the first hearing and determined that Ms. Smith can perform assembly jobs, machine tender jobs, and bench and table laborer jobs. Additionally, the ALJ determined that "substantially the entire sedentary unskilled occupational base remains intact and available to the claimant." AR 24.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court

"meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Ms. Smith raises three issues on appeal: (1) whether the ALJ erred in failing to properly evaluate the opinions of Dr. Swink, a consultative examiner; (2) whether the ALJ's RFC determination was legally sufficient and supported by substantial evidence; and (3) whether the ALJ erred in evaluating Ms. Smith's credibility based on her actual and purported criminal history.

## V. Analysis

### A. The ALJ's Analysis of the Consultative Examining Source Opinion and the ALJ's RFC Determination

The first two issues are closely related. Ms. Smith contends that the ALJ erred in his evaluation of the opinion of Dr. Richard Swink, a consultative examining medical source. The ALJ requested an evaluation by Dr. Swink pursuant to the direction of the Appeals Council to obtain additional evidence concerning Ms. Smith's mental impairments. *See* AR 18. As explained in further detail below, the ALJ's RFC determination is internally

inconsistent when compared with the findings of Dr. Swink, upon which the ALJ extensively relied, and the inconsistency is not explained. Therefore, the ALJ's RFC determination is not supported by substantial evidence in the record.

Under the Commissioner's regulations, an ALJ is required to evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Id.* These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. United States Dep't. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (*citing* 20 C.F.R. § 404.1527(d)(2)-(6)).

In this case, Dr. Swink, an examining agency consultant, based his opinion on an interview with Ms. Smith and the results of a battery of standardized tests he administered.

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling

5

weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927.

In determining Ms. Smith's RFC, the ALJ determined that despite her mental impairments, Ms. Smith can:

> retain and carry out simple and some more complex tasks with routine supervision; can relate appropriately to coworkers and supervisors regarding work but cannot relate to the general public; can perform the basic mental demands of work activity as set out in SSR 96-9p, to wit: she can understand, remember and carry out simple instructions; make judgments (i.e., simple work related decisions); respond appropriately to supervision, coworkers, and usual work situations; and can deal with changes in a routine work setting.

AR 23.

Dr. Swink found that Ms. Smith's mental impairments have a moderate effect on her ability to interact appropriately with supervisors, co-workers, and the public, as well as a moderate effect on her ability to respond to changes in a routine work setting. AR 319. But despite the fact that Dr. Swink rated the effect of each one of these impairments as "moderate," the ALJ found Ms. Smith capable of interacting appropriately with supervisors and coworkers, capable of dealing with changes in a routine work setting, but incapable of relating to the general public. Although the ALJ relied extensively on Dr. Swink's opinions and explicitly gave those opinions more weight than those of other medical sources, the ALJ did not explain why some of the "moderate" limitations assessed by Dr. Swink resulted in

6

less restrictions in the RFC than other "moderate" limitations he assessed. This unexplained inconsistency significantly undercuts the RFC findings.

The Commissioner offers several explanations in an attempt to justify the ALJ's RFC determination. But an ALJ's decision is "evaluated based solely on the reasons stated in the decision," without engaging in a "post hoc effort to salvage" it. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). This court does not "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Id.* at 1084-85 (quotation omitted).

On remand, the ALJ should explain any inconsistencies in the use of the opinions of medical sources in determining Ms. Smith's RFC.

### B. The ALJ's Credibility Analysis

Ms. Smith also challenges the ALJ's credibility evaluation. This point is also well-taken. The ALJ's credibility determination was based in large part on Ms. Smith's actual and purported criminal history. The ALJ gave no explanation as to why Ms. Smith's conviction for possession of a firearm while intoxicated makes her statements regarding her symptoms less credible. Moreover, the ALJ relied on a purported conviction based on the unauthorized use of a motor vehicle. The record contains no evidence of the latter conviction, and Ms. Smith contends it was not she who was convicted of this crime. Moreover, Ms. Smith was given no opportunity to explain that it was not she who was convicted of this crime.

"'Credibility determinations are peculiarly the province of the finder of fact[.]'" *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (*quoting Diaz v. Secretary of Health*

*& Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). Nevertheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

In *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987), the Tenth Circuit Court of Appeals set forth the framework for the proper analysis of a claimant's pain or other symptoms. First, the objective medical evidence must demonstrate the existence of an impairment capable of producing the alleged symptoms. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's symptoms are in fact disabling. *Id.* at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of testimony concerning pain or other symptoms, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

8

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)). The ALJ quoted factors which he should have considered in determining Ms. Smith's credibility:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3; AR 20-21.

The ALJ determined that Ms. Smith "suffers medically determinable impairments which could reasonably be expected to cause the pain, discomfort, and psychological limitations" which she alleges. After finding that Ms. Smith's medically determinable impairments could cause the symptoms of which she complained, the ALJ should have considered the aforementioned factors to determine whether her complaints were credible. The ALJ ostensibly considered the seven factors listed in SSR 96-7p, finding that Ms. Smith's "statements concerning the intensity, persistence and limiting effects of these

9

symptoms are not entirely credible." AR 21. The ALJ discussed some of the medical evidence with regard to Ms. Smith's credibility. He noted that she does not experience hallucinations, delusions, or suicidal ideations. AR 21. Without detailing her activities of daily living, the ALJ relied partially on his conclusory finding that "[t]here is no indication that claimant's ability to carry on the activities of daily living has been eroded to the extent that she would be precluded from engaging in all work activity." AR 21.

But the ALJ also based his credibility determination in large part on Ms. Smith's alleged criminal record:

> The Administrative Law Judge finds that the claimant's credibility is further eroded by her criminal record. The claimant has been convicted of carrying a firearm while under the influence of intoxicating liquor. The claimant also pled guilty to the felony of unauthorized use of a vehicle for which the Court deferred sentencing and placed the claimant on probation.

AR 22. A claimant's criminal record is not listed as one of the factors an ALJ should consider when determining a claimant's credibility. Nevertheless, some courts have accepted conviction of a felony as a basis for a negative credibility finding. *See Simmons v. Massanari*, 264 F.3d 751 (8th Cir. 2001) (upholding without discussion a negative credibility finding based on the claimant's having given conflicting statements and having been convicted of forgery); *Williams v. Commissioner of Social Security*, 423 F.Supp.2d 77, 84 (W.D.N.Y. 2006) (holding without discussion that the ALJ's reliance on the claimant's testimony that she had engaged in assaultive conduct in the past and possibly in criminal behavior, including income tax evasion, was within the ALJ's reasonable discretion).

Other courts, however, have limited the range of convictions an ALJ may consider to assess a claimant's credibility to crimes involving moral turpitude. *See Albridrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (approving use of a conviction of presenting false identification to an officer and a conviction of the violent crime of attempted robbery, but not permitting use of a conviction of simple battery); *Cockren v. Astrue*, No. 2010 WL 2791569 at *11 (E.D. Cal. Jul. 14, 2010) (approving use of conviction for grand theft as a fair reason for questioning a claimant's credibility) (unpublished op.); *Roach v. Astrue*, 2009 WL 2380109 (C.D. Cal. Jul. 30, 2009) (affirming ALJ's credibility finding based in part on claimant's conviction of welfare fraud) (unpublished op.). These holdings are generally consistent with Fed. R. Evid. 609, which provides in substance that for the purpose of attacking the truthfulness of a witness, evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness, and regardless of the elements, if a witness has been convicted of a crime punishable by death or imprisonment in excess of one year.[1]

In this case, Ms. Smith had the opportunity at the first hearing to explain the circumstances of her arrest and conviction for possession of a gun while intoxicated, a misdemeanor. She stated that she was carrying the unloaded gun with the "clip on one side"

---

[1]Although the Federal Rules of Evidence do not apply to administrative proceedings, the Court finds this rule to be a useful guide in determining whether the ALJ's credibility determination is supported by "substantial evidence" -- *i.e.*, relevant evidence that a reasonable person might accept as adequate to support a conclusion. *See Doyal v. Barnhart*, 331 F.3d at 760.

for protection. She stated she was arrested for having the gun "[b]efore I got it legal." AR 373. The record includes a docket sheet for Case No. CM-2001-3660, District Court of Oklahoma County, showing Ms. Smith was convicted of the misdemeanor of carrying a firearm while under the influence of intoxicating liquor. AR 176-181. Ms. Smith specifically stated that she had never been convicted of a felony. Nevertheless, the ALJ also relied on an alleged felony conviction for unauthorized use of a vehicle. AR 22. There is nothing in the record to support the ALJ's contention that Ms. Smith was ever convicted on such charges. Ms. Smith contends that it was not she who was convicted of this crime, and the Commissioner does not dispute her contention. It is well established that "social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) (*citing Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983)); *see also Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). The ALJ's *ex parte* consideration of evidence not included in the record thus requires reversal on due process grounds. *Cp. Allison*, 711 F.2d at 147 ("ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report.").

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by August  20th , 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  30th  day of July, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE